IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| KAREN HUDSON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>Polaroid Corporation and PLR IP Holdings, LLC, a Delaware Limited Liability Company,<br><br>    Defendants. | No. 0:11 CV 01482-RHK-JSM<br><br>Judge Richard H. Kyle<br>Magistrate Judge Janie S. Mayeron<br><br><br>**DEFENDANT PLR IP HOLDINGS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**NOTED ON MOTION CALENDAR: September 29, 2011**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.    INTRODUCTION

On June 6, 2011, Plaintiffs commenced a lawsuit against PLR IP Holdings, LLC (d/b/a Polaroid), ("PLR IP Holdings") without a legal or factual basis. Plaintiffs allege Polaroid branded LCD televisions from the mid-2000's suffer from a design defect resulting in the televisions failing and causing harm. The alleged defective televisions were not manufactured, sold, or caused to be manufactured or sold, by Defendant PLR IP Holdings. Defendant PLR IP Holdings is not in the business of selling televisions and has never manufactured a television. Rather, Defendant PLR IP Holdings purchased assets of Polaroid Corporation (n/k/a PBE Corporation) in May 2009 in a bankruptcy sale, free and clear of any claims or interests, well after the manufacture and sale of the alleged defective Polaroid branded LCD televisions by Polaroid Corporation (n/k/a PBE

Corporation).  Accordingly, there is no basis for this suit against PLR IP Holdings, and the case should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

For purposes of this motion, some operative facts are taken from the Complaint, documents incorporated by reference, and information subject to judicial notice.

### a.  The Polaroid Corporation (n/k/a PBE Corporation) Bankruptcy Sale and Defendant PLR IP Holdings, LLC (d/b/a Polaroid) Purchase of Assets

Polaroid Corporation (n/k/a PBE Corporation) filed a Chapter 11 bankruptcy petition on December 18, 2008.  PLR Acquisition, LLC ("PLR Acquisition") was the successful bidder for substantially all Debtor Polaroid Corporation (n/k/a PBE Corporation) assets, including the Polaroid brand, under an Asset Purchase Agreement dated April 16, 2009.  (Asset Purchase Agreement, Recital No. 7, Ex. A[1]; First Amendment to Asset Purchase Agreement, Ex. B.)  This sale of Polaroid Corporation (n/k/a PBE Corporation) assets to PLR Acquisition closed on May 7, 2009.  Pursuant to the terms of the Asset Purchase Agreement, PLR Acquisition transferred all of the Acquired Intellectual Property to PLR IP Holdings, LLC, a named defendant in the present case.  (Asset Purchase Agreement, Ex. A.)

Under the Asset Purchase Agreement, in exchange for the "Acquired Assets," PLR Acquisition paid the Debtor Polaroid Corporation (n/k/a Polaroid Corporation) $55 million in cash, plus (1) a percentage of gross proceeds of accounts receivable collected

---

[1] Citations to "Ex. ___" refer to exhibits attached to the supporting Declaration of Marta M. Chou.

by PLR Acquisition, and (2) 25% of the fully-diluted equity of PLR Acquisition's wholly-owned subsidiary, PLR IP Holdings, LLC (defined in the Asset Purchase Agreement as the "Equity Consideration"). (Asset Purchase Agreement, Ex. A.) The "Acquired Assets[2]" included the Debtors' inventory and other property. (Asset Purchase Agreement, § 1.1, Ex. A.)

PLR IP Holdings, LLC (d/b/a Polaroid) is a separate, independent and completely unrelated company from Polaroid Corporation (n/k/a PBE Corporation). PLR IP Holdings, LLC is not the parent corporation of nor does it have any ownership interest in Polaroid Corporation (n/k/a PBE Corporation). These are separate and unrelated entities. PLR IP Holdings is not in the business of selling televisions and has never manufactured a television.

After a hotly contested series consisting of three auctions, the United States Bankruptcy Court for the District of Minnesota approved the sale on April 17, 2009, and entered its Order Authorizing: (I) Sale of Certain of the Debtors' Assets, Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) the Granting of Related Relief (the "Sale Order", Ex. C.) The sale closed on May 7, 2009. The Sale Order provides (as allowed by Bankruptcy Code § 363), in pertinent part, the free and clear sale of the Acquired Assets, ordering:

---

[2] Section 1.1, of the Asset Purchase Agreement lists the Acquired Assets purchased and includes, for example: real property (§ 1.1(a)); equipment, machinery, furniture and fixtures (§ 1.1(b)); contracts (§ 1.1(c)); supplies (§ 1.1(e)); intellectual property (§ 1.1(f)); computer hardware (§ 1.1(g)); permits, authorizations and licenses (§ 1.1(h)); corporate archives (§ 1.1(r)) and more. *See* Ex. A at §§ 1.1(a)-(r).

The sale of the Acquired Assets to Buyer pursuant to the Purchase Agreement constitute legal, valid, and effective transfers of the Acquired Assets, and shall vest the Buyer **with all right, title, and interest of the Debtors in and to the Acquired Assets being purchased by the Buyer free and clear of all Claims or Interests of any kind of nature whatsoever other than the applicable Assumed Liabilities.**

(Sale Order, ¶ 9, Ex. C.) (emphasis added).

In addition to the sale free and clear, the Sale Order enjoins all persons "holding Claims or Interests of any kind or nature whatsoever against a Debtor or the Acquired Assets" from asserting such claims or interests against PLR or the Acquired Assets, as such Claims or Interests are "forever barred, estopped, and permanently enjoined from asserting against any Buyer . . .."[3] (Sale Order ¶ 8, Ex. C.)

---

[3] In the Sale Order, the Court found and determined that without the assurances of the purchase of assets free and clear of all claims and interests, PLR IP Holdings, LLC would not have purchased said assets, finding:

Buyer would not have entered into the Purchase Agreement and Buyer would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Acquired Assets to Buyer were not, except for the Assumed Liabilities, **free and clear of all Claims and Interests of any kind or nature whatsoever, of it Buyer would, or in the future could, be liable for any of the Claims and Interests."** (Sale Order, ¶ R, Ex. C.) (emphasis added.)

Further, in its findings contained within the Sale Order, the Court states:

**The Debtors [Polaroid Corporation (n/k/a PBE Corporation)] may sell the Acquired Assets free and clear of all Claims and Interests of any kind or nature whatsoever**, because in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code has been satisfied. Those holders of Claims and Interests and non-Debtors to Acquired Contracts who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Claims and Interests and non-Debtors of Acquired Contracts who did object fall within one or more of the other subsections of 363(f) of the Bankruptcy Code and **are**

### b. Plaintiffs' Complaint

On June 6, 2011—over two years after the Sale Order was issued by the United States Bankruptcy Court for the District of Minnesota and over four-and-a-half years since Plaintiff Karen Hudson's Polaroid branded television allegedly "went dark"—Plaintiffs filed this lawsuit.  (Sale Order, Ex. C; Compl. ¶ 35.)  Plaintiffs contend (albeit, it is unclear from the Complaint precisely what Plaintiffs allege) older Polaroid branded LCD televisions suffer from a design defect resulting in the televisions failing, becoming inoperable, and, in some instances, smoking and catching fire.  (Compl. ¶ 3.)  Plaintiffs further claim "Polaroid has been aware since 2006-2007 that their LCD TVs are not only unreliable, but are also a dangerous fire hazard."  (*Id.*)  Plaintiffs claim Polaroid concealed the television defects and incorrectly included an Underwriters Laboratories certification on a Polaroid branded television that was not certified by that entity.[4] (Compl. ¶ 5.)

---

**adequately protected by having their Claims and Interests that are secured by liens, security interests and similar encumbrances, if any, attach to the Net Proceeds of the Sale ultimately attributable to the property against or in which they assert such Claim or Interest**, with the same validity, priority and effect and to the same extent that existed immediately prior to the consummation of the Sale and in all cases subject to any and all rights, claims and defenses that the Debtors may have with respect thereto.  (Sale Order, ¶ S, Ex. C) (emphasis added.)

[4] PLR IP Holdings was not even in existence when Polaroid Corporation (n/k/a PBE Corporation) was alleged in 2010 to have incorrectly used a certification by Underwriters Laboratories.

## III.     ARGUMENT

### a.  Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A complaint should be dismissed under Rule 12(b)(6) if it fails to make allegations that, if proven, would entitle the plaintiff to relief. *Wisdom v. First Midwest Bank,* 167 F.3d 402, 406-07 (8th Cir. 1999).  The purpose of Rule 12(b)(6) is to allow courts to eliminate actions like those in this case "which are fatally flawed in their legal premises and designed to fail." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)).  By testing the legal sufficiency of the complaint at an early stage, the courts can "spar[e] litigants the burden of unnecessary pretrial and trial activity." *Id.*

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the facts alleged in the complaint—accepted as true and construed in favor of the non-movant—establish "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007); *Northstar Indus. Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009).  And if the facts do not meet this standard, as is the case here, the Court must dismiss the complaint.

As established by the now familiar *Twombly* decision, the complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Id.* at 555.  This standard requires "more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Although the court must construe the complaint favorably to the non-movant and accept any factual allegations as true—however unlikely—the court is "not bound to accept as true a legal conclusion

couched as a factual allegation." *Id.* at 1950; *Detroit General Retirement Sys. v. Medtronic, Inc.*, 621 F.3d 800, 804–05 (8th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*, 129 S.Ct. at 1950; *see also Detroit General Retirement*; 621 F.3d at 804–05.

On a motion to dismiss, the Court may take judicial notice of matters of public record, including pleadings and orders, news articles, and SEC filings. *See Levy v. Ohl,* 477 F.3d 988, 991-92 (8th Cir. 2007) (court records); *In re K-tel Int'l, Inc. Secs. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002) (SEC filings); *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 214 (3rd Cir. 2007) (news articles and press releases noticed for limitations purposes).

### b. Plaintiffs' Suit is Barred by the Bankruptcy Sale Order

A transferee who purchases property from a bankruptcy estate under 11 U.S.C. § 363(f)'s "free and clear" provision takes that property "free and clear of any interest in such property of an entity other than the estate." *In re Arctic Enters, Inc.*, 68 B.R. 71, 79 (Bankr. D. Minn. 1986) (emphasis omitted). As the court in *Arctic Enterprises* noted, "the legislative statements accompanying section 541(a) of the Code make clear that the term 'interest in property' as used in that section 'is an all-embracing definition . . . .'" *Id.* Such a sale "is a judgment that is good as against the world, not merely as against [the] parties to the proceedings." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 732 (8th Cir. 2004). Thus, under a § 363(f) "free and clear" sale, the transferee's title to the property is not susceptible of any other party's interest. *See id.* at 80.

In the 2009 bankruptcy sale, PLR IP Holdings (d/b/a Polaroid) was the successful bidder for substantially all of Debtor Polaroid Corporation's (n/k/a PBE Corporation) assets. (Asset Purchase Agreement, Ex. A.) In exchange for the "aggregate consideration and purchase price for the sale, transfer, assignment and conveyance of the Acquired Assets" (*Id.* at ¶ 2.1(a)), PLR IP Holdings attained the Acquired Assets "free and clear of all Claim or Interests of any kind of nature whatsoever other than the applicable Assumed Liabilities" pursuant to Section 363 of the Bankruptcy Code. (Sale Order, ¶ 9, Ex. C; *see also* Asset Purchase Agreement, Recital No. 7, Ex. A.) Further, the Bankruptcy Court determined that were the sale of the Acquired Assets not "free and clear of all Claims and Interests of any kind or nature whatsoever," buyer PLR IP Holdings " would not have entered into the Purchase Agreement and Buyer would not consummate the transactions completed thereby." (Sale Order, ¶ R, Ex. C.)

In addition to the sale of the Acquired Assets free and clear, the Bankruptcy Sale Order further enjoined all persons "holding Claims or Interests of any kind or nature whatsoever against a Debtor or the Acquired Assets" from asserting such claims. (Sale Order, ¶ 8, Ex. C.) The Court ordered such Claims or Interests are "forever barred, estopped, and permanently enjoined from asserting against any Buyer . . .." (Sale Order, ¶ 8, Ex. C; *see also id.* at ¶ S.) Further, the Asset Purchase Agreement expressly "[e]xcluded [l]iabilities" such as, "[c[laim][s] related to products sold and/or produced by or on behalf of Sellers prior to the Closing" and "all warranty and return obligations, including without limitation, all liabilities and obligations to repair or replace, or to refund the sales price (or any other related expenses) for Inventory sold prior to the

Closing Date." (Asset Purchase Agreement, ¶¶ 1.4(e), 1.4(g), Ex. A; *see also id.* at Recital no. 7, Ex. A.) In short, the Bankruptcy Sale Order precludes Plaintiffs' claims.

### c. Plaintiffs' Complaint Should Be Dismissed Because It Fails to Allege Any Successor Liability on the Part of Defendant PLR IP Holdings

Even in the absence of a bankruptcy sale free and clear of such claims—as is the case pending before this court—under the well-established general rule against corporate successor liability, a transferee of corporate assets is not liable for the debts or liabilities of the transferor, unless the transferee assumed them under a contract or one of four exceptions applies. MINN. STAT. § 302A.661, subd. 4 (2010); *J.F. Anderson Lumber Co. v. Myers*, 206 N.W.2d 365, 368–69 (1973). *See also Knott v. AMFEC*, No. 09-cv-1098 (PJs/AJB), 2010 WL 1528393 (D. Minn. April 15, 2010) (unpublished case attached as Ex. D). Minnesota follows this rule in both its common and statutory law and has declined to expand the range of exceptions by adding a fifth source of liability that applies in a small number of jurisdictions. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 99-100 (Minn. 1989). As summarized in the seminal case of *J.F. Anderson Lumber Co. v. Myers*, Minnesota's general rule is "where one company sells or otherwise transfers all its assets to another company, the purchasing company is not liable for the debts and liabilities of the transferor." 206 N.W.2d at 368–69. Minnesota statute also codified the rule as, "[t]he transferee is liable for the debts, obligations, and liabilities of the transferor only to the extent provided in the contract or agreement between the transferee and the transferor or to the extent provided by this chapter or other statutes of this state." MINN. STAT. § 302A.661, subd. 4.

In the 2009 bankruptcy sale, Defendant PLR IP Holdings (d/b/a Polaroid) purchased assets of Polaroid Corporation (n/k/a PBE Corporation) "free and clear of all Claims or Interests of any kind . . ." pursuant to an Order which enjoined all persons "holding Claims or Interests of any kind or nature whatsoever against a Debtor or the Acquired Assets" from asserting such claims against PLR IP Holdings or the Acquired Assets. (Sale Order, ¶¶ 8, 9, Ex. C.) In short, PLR IP Holdings did not assume claims or liabilities of Polaroid Corporation (n/k/a PBE Corporation). To the extent Plaintiffs have a claim, it would be not against PLR IP Holdings, but rather against Polaroid Corporation (n/k/a PBE Corporation), the entity in existence at the time the alleged defective products were manufactured and sold, and any lawsuit—or monetary recovery—remains with that entity. (Asset Purchase Agreement, ¶¶ 1.2, 1.4(e), 1.4(g), Ex. A.) In pertinent part, the Sale Order provides:

> [T]he Acquired Assets shall be transferred to Buyer and upon the Closing shall be, free and clear of all Claims and Interests of any kind or nature whatsoever . . . and **all such Claims and Interests that are secured by liens, security interest and similar encumbrances of any kind or nature whatsoever shall attach to the Net Proceeds . . . of the Sale in order of their priority, with the same validity, force, and effect which they now have as against the Acquired Assets, subject to any rights, claims or defenses any of the Debtors may possess with respect thereto.**

(Sale Order, ¶ 7, Ex. C.) (emphasis added.) This Sale Order is binding on all known and unknown creditors of Debtor Polaroid Corporation (n/k/a PBE Corporation).[5]

---

[5] The Sale Order provides, in pertinent part, that **"[t]his Order and the Purchase Agreement shall be binding in all respects upon all creditors of and holders of equity interests in any Debtor (whether known or unknown),** any holders of Claims and Interests, all non-Debtors to the Acquired Contracts, all applicable successors and assigns of Buyer, the Debtors, and any subsequent trustees appointed in the Debtors'

### i. Exceptions to General Rule Against Corporate Successor Liability Also Provide No Recourse for Plaintiffs

The Bankruptcy Sale Order expressly disavows any corporate successor liability in the sale of assets from Polaroid Corporation (n/k/a PBE Corporation) to purchaser PLR IP Holdings (d/b/a Polaroid). (Sale Order, ¶¶ 8, 9, Ex. C.) The Sale Order repudiated any assumption of claims or liabilities "of any kind or nature whatsoever against a Debtor or Acquired Assets" and further "forever barred, estopped, and permanently enjoined from asserting against any Buyer [PLR IP Holdings] . . .." (Sale Order, ¶ 8, Ex. C.) Should the Court, nonetheless, inquire into the general rule against corporate successor liability—despite the Bankruptcy Sale Order expressly precluding liability to the purchaser of assets—Plaintiffs will be unable to successfully prove that they are an exception to this general rule against corporate successor liability.

There are four well-established common law exceptions to this general rule against corporate successor liability.[6] The exceptions encompass four scenarios, imposing liability:

(1) where the purchaser expressly or impliedly agrees to assume such debts;
(2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation

---

Chapter 11 cases or upon a conversation to chapter 7 under the Bankruptcy Code and shall not be subject to rejection. (Sale Order, ¶ 6, Ex. C.) (emphasis added.)

[6] Some jurisdictions have accepted a fifth exception that applies when a successor continues to produce the same product line. *See Niccum*, 438 N.W.2d at 99-100. This exception imposes "strict liability for products manufactured and sold before the change of corporate ownerships." *Id.* (citing *Ray v. Alad Corp.*, 19 Cal.3d 22, 34, 560 P.2d 3, 11, 136 Cal.Rptr. 574, 582 (1977)). In this state, however, the Minnesota Supreme Court "emphatically rejected" this exception in *Niccum v. Hydra Tool Corp. See Knott*, 2010 WL 1528393, *2 (citing *Niccum*, 438 N.W.2d at 99–100).

of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*J.F. Anderson*, 206 N.W.2d at 368–69 (quoting 15 Fletcher, CYCLOPEDIA OF CORPORATIONS (Perm. Ed.) § 7122); *see also K.C. 1986 Ltd. Partnership v. Reade Mfg.*, 472 F.3d 1009, 1021 (8th Cir. 2008); *Everest v. Am. Trans. Corp.*, 685 F.Supp. 203, 205– 06 (D. Minn. 1988). While Plaintiffs have not alleged and can not establish any exceptions apply in the present case, PLR IP Holdings addresses them in turn.

### 1. Plaintiffs Have Not Even Alleged PLR IP Holdings Agreed to Assume Polaroid Corporation's (n/k/a PBE Corporation) Liabilities

The first exception applies when the purchaser explicitly or impliedly agrees to assume the seller's liabilities as part of the sale of assets. However, an explicit agreement that the purchaser will *not* assume any liabilities negates the question of whether the parties had an implied agreement. In the recent unpublished case of *Knott v. AMFEC*, for example, a federal court for the District of Minnesota dealt with a transaction in which the purchaser expressly refused to assume any liabilities as part of the sale. 2010 WL 1528393 (unpublished case attached as Ex. D). Because the agreement expressly said that the purchaser did not assume any of the predecessor's tort liabilities, the court held that there could not possibly be an implied agreement to the contrary. *Id.* at *6-7. The Court opined, "[i]t is one thing to read an implicit promise into a contract that is silent on a matter. But it is quite another thing to read an implicit promise into a contract that explicitly *rejects* any such promise." *Id.* (emphasis in original). *Compare Knott v. AMFEC*, 2010 WL 1528393 *with Keller v. Clark Equip. Co.*, 715 F.2d 1280 (8th Cir.

1983) (imposing successor liability where the purchaser contractually agreed to assume the transferor's debts and liabilities).

In the present case, the Plaintiffs fail to allege any facts which would show an implied agreement on the part of PLR IP Holdings (d/b/a Polaroid) to assume any liabilities of Polaroid Corporation (n/k/a PBE Corporation) as part of the asset purchase. The Asset Purchase Agreement explicitly provides:

> WHEREAS, the Acquired Assets and Assumed Liabilities shall be purchased and assume by Buyer pursuant to the Bankruptcy Sale Order approving such sale, **free and clear of all Liens**, other than Permitted Liens) and Claims, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code . . ..

(Asset Purchase Agreement, Recital No. 7, Ex. A.) (emphasis added.) Furthermore, the Sale Order explicitly provides:

> The sale of the Acquired Assets to Buyer pursuant to the Purchase Agreement constitute legal, valid, and effective transfers of the Acquired Assets, and shall vest the Buyer with all right, title, and interest of the Debtors in and to **the Acquired Assets being purchased by the Buyer free and clear of all Claims or Interests of any kind or nature whatsoever other than the applicable Assumed Liabilities.**

(Sale Order, ¶ 9, Ex. C.) (emphasis added.)  Plaintiffs' Complaint simply cannot survive a motion to dismiss based on this first exception as it wholly fails to allege any facts showing the existence of an implied agreement to assume liabilities and, in fact, the Sale Order explicitly shows the contrary.  (*Id.*)

### 2. Plaintiffs Have Not Alleged PLR IP Holdings Merely Consolidated or Merged with Polaroid Corporation's (n/k/a PBE Corporation) Operations

The second exception against the general rule precluding corporate successor liability applies when "a transaction amounts to a consolidation or merger of the corporation." *J.F. Anderson*, 206 N.W.2d at 368-69. For the purposes of successor liability, the statutes are clear that "[a] disposition of all or substantially all of a corporation's property and assets under this section is not considered to be a merger or a de facto merger pursuant to this chapter or otherwise." MINN. STAT. § 302A.661, subd. 4.

In the instant case, PLR IP Holdings has not and did not merge or consolidate with Polaroid Corporation (n/k/a PBE Corporation). Plaintiffs do not allege that a merger occurred between PLR IP Holdings and Polaroid Corporation (n/k/a/ PBE Corporation) when the former acquired the latter's assets in bankruptcy.[7] Rather, Plaintiffs incorrectly assert that "Polaroid Corporation [is] in joint holding under a parent company named PLR IP Holdings, LLC." (Compl. ¶ 10.) Any potential future allegations by Plaintiffs that PLR IP Holdings acquired "all or substantially all" of Polaroid Corporation's (n/k/a PBE Corporation) assets would, under the plain terms of statute 302A.661, also fail to establish a merger for the purposes of this exception. MINN. STAT. § 302A.661, subd. 4. In short, PLR IP Holdings purchased assets from Polaroid Corporation (n/k/a PBE Corporation) in a bankruptcy sale in which Polaroid Corporation (n/k/a PBE Corporation) actively and vociferously opposed the sale to PLR IP Holdings; there is no other

---

[7] Plaintiffs erroneously claim that PLR IP Holdings is "the parent company of Polaroid Corporation." (Compl. ¶ 10.)

14

relationship between PLR IP Holdings (d/b/a Polaroid) and Polaroid Corporation (n/k/a PBE Corporation).  (Asset Purchase Agreement, Section 1, Ex. A; Sale Order, Ex. C.)

For the purposes of this motion to dismiss, the only relevant question is whether the facts alleged in the complaint plausibly disclose a claim upon which relief can be granted—if not, the court must grant the motion.  *Twombly*, 550 U.S. at 545, 570; *Northstar Indus.*, 576 F.3d at 832.  Since the Plaintiffs' factual allegations—even when assumed to be true and construed in the most favorable light possible—fail to even mention, let alone establish the existence of any merger or consolidation, this second exception can impose no successor liability.  As such, the Plaintiffs cannot establish a claim for which relief can be granted under this exception.

### 3. Plaintiffs Have Not Alleged PLR IP Holdings is Merely a Continuation of Polaroid Corporation (n/k/a PBE Corporation)

The third exception to the general rule precluding corporate successor liability imposes liability when the transaction merely works to continue the existing business operations.  *J.F. Anderson*, 206 N.W.2d at 370.  Minnesota recognizes this exception in some situations such as reorganizations, but facts showing a "continuity of business, name, and management alone" are insufficient to impose liability on a purchaser.  *Id.*  As codified in the Minnesota Statutes, "[a] transferee shall not be liable solely because it is deemed to be a continuation of the transferor."  MINN. STAT. § 302A.661, subd. 4.

The *J.F. Anderson* court characterized the issue in that case as whether successor liability existed absent, among the other exceptions, "a corporate reorganization in the nature of a continuation."  206 N.W.2d at 368.  The exception, thus, only applies to true

reorganizations—it does not apply when a purchaser acquires assets, including the seller's name, trademarks, or goodwill, as the instant case. *Id.* Similarly, it is not enough for the purchaser to keep operating the same business processes with the same equipment. By way of further example, in *Everest v. American Transportation Corporation*, a federal court for the District of Minnesota refused to apply the exception to a transaction in which the purchaser acquired all of the assets of a bankrupt company continued using the seller's facilities and labor contract to manufacture the same product. 685 F.Supp. at 205–06, 207.

More recently, in *Johns v. Harborage I*, the defendant sold its assets to another entity that continued operating the business in exactly the same manner. 664 N.W.2d 291, 294 (Minn. 2003). Under the asset sale contract, the new owner expressly refused to assume "all liabilities and obligations" other than a narrowly defined set of obligations, including accrued vacation benefits and other accounts payable. *Id.* The new business retained managers, employees, uniforms, compensation plans, décor, and menu. *Id.* However, when the plaintiff attempted to pursue successor liability against the new owner of the assets, the Minnesota Supreme Court applied Minnesota Statute 302A.661 to conclude that the new owner could not be liable. *Id.* at 297. The Court held that since a transferee is only liable for the transferor's obligations to the extent agreed upon in the contract, and because the asset sale agreement only accepted a specific class of liabilities, the plaintiff could not pursue the new owner under Minnesota law. *Id*

Here, Plaintiffs have not alleged any facts in their complaint—other than unsupported reference to PLR IP Holdings as Polaroid Corporation's (n/k/a PBE

Corporation) "parent company"—in a bold attempt to establish this continuation exception. (Compl. ¶ 10.) Furthermore, the facts here are analogous to those in *Everest* and *Harborage I*. PLR IP Holdings acquired certain Polaroid Corporation's (n/k/a PBE Estate) assets in a bankruptcy sale, primarily to use and license the Polaroid trademark. Even if PLR IP Holdings had merely continued Polaroid Corporation's (n/k/a PBE Corporation) business, the successor liability statute leaves no doubt that "a continuation of the transferor" is not a basis for liability on the transferee. This exception is unavailable and cannot help Plaintiffs establish a cognizable claim.

### 4. Plaintiffs Have Not Even Alleged That PLR IP Holdings Purchased Polaroid Corporation's (n/k/a PBE Corporation) Assets to Fraudulently Avoid Plaintiffs' Alleged Liabilities

The last of Minnesota's four exceptions to the rule against successor liability only applies when a transfer has occurred to fraudulently avoid liabilities. *Niccum*, 438 N.W.2d at 98. To base a claim of liability under this exception, Plaintiffs must allege facts evidencing fraudulent activity with the sale of Polaroid Corporation's (n/k/a PBE Corporation) assets. *Id.* Under Minnesota Statute 513.44(a)(1), a fraudulent transfer requires "actual intent to hinder, delay, or defraud" a creditor or "without receiving a reasonably equivalent value in exchange." MINN. STAT. §§ 513.44(a)(1)-(2) (2010). In looking for actual intent, courts consider a number of factors, as listed in Minnesota Statute 513.44(b)(1)-(11).

No recorded case has applied the fraudulent transfer statute in the context of successor liability in Minnesota. But, in the unpublished case of *Sweeter v. Power*

*Industries*, the defendants' conduct satisfied six factors. Case No. A05-2466, 2006 WL 2865329 at *4 (Minn. Ct. App. Oct. 10, 2006) (unpublished case attached as Ex. E). For example, (1) the transfer was to an insider family member, (2) the original owner retained control, (3) the transfer was a hidden secret, (4) the transfer took place after the lawsuit commenced and liability appeared likely, (5) and the transferee gave only nominal consideration. *Id*. These facts were determined to have constituted a fraudulent transfer for the purposes of this exception. *Id.*

In the instant case, however, since the Plaintiffs' only reference to the role of PLR IP Holdings is as Polaroid Corporation's (n/k/a PBE Corporation) "parent company," the alleged facts, if accepted as true, fail to state a claim upon which relief can be granted under this exception. (Compl. ¶ 10.) Factual allegations that one company is affiliated with another do not rise to an inference of a fraudulent transfer and do not even rise to the factors provided in Minnesota Statute 513.44(b)(1)-(11). Since that is the only factual allegation regarding the sale of assets to PLR IP Holdings or the entity's relationship with Polaroid Corporation (n/k/a PBE Corporation), the Plaintiffs have not stated a claim under the fourth and final exception to the rule against successor liability.

> **ii.    Plaintiffs' Complaint Fails to Contain a Plausible Claim Pursuant to Rule 8(a) and, Consequently, the Complaint Should Be Dismissed**

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Further, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The United States

Supreme Court has determined that a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Such an inquiry is "a context-specific task" and any plausible inference of bad acts alone does not entitle plaintiffs to relief. *Id.* at 1949, 1952.

In the instant case, Plaintiffs allege that certain older Polaroid branded LCD televisions suffer from a design defect rendering the televisions to fail. (Compl. ¶ 3.) From the allegations contained in the Complaint, the alleged defective products were manufactured prior to Defendant PLR IP Holdings (d/b/a Polaroid Corporation) purchase of Polaroid Corporation's (n/k/a PBE Corporation) assets in a Sale Order approved April 17, 2009 and closed on May 7, 2009. (Compl. ¶ 26; Sale Order, ¶¶ 8, 9, Ex. C.) As discussed above, Defendant PLR IP Holdings purchased assets of Polaroid Corporation (n/k/a PBE Corporation) "free and clear of all Claims or Interests of any kind . . ." and with the enjoinment of all persons "holding Claims or Interests of any kind or nature whatsoever against a Debtor or the Acquired Assets." (Sale Order, ¶¶ 8, 9, Ex. C.)

Accordingly, even taking the facts alleged in the Complaint as true, and construed in favor of the non-movant Plaintiffs, there is no plausibility of Plaintiffs' entitlement to relief by PLR IP Holdings. *Twombly*, 550 U.S. at 545, 570; *Ashcroft,* 129 S. Ct. at 1949 (internal citations omitted). Plaintiffs' only factual allegation against PLR IP Holdings is that it sold defective Polaroid branded LCD televisions. (Compl. ¶¶ 24, 26, 36.) Any claim Plaintiffs may have for defective products for the period of time in question is against Polaroid Corporation (n/k/a PBE Corporation) and not PLR IP Holdings, the

purchaser of bankrupt Polaroid Corporation's (n/k/a PBE Corporation) assets. (Sale Order, ¶ 7, Ex. C.). PLR IP Holdings is neither in the business of selling nor manufacturing televisions. In short, and pursuant to Rule 8(a), Plaintiffs have not shown a "plausibility of entitlement to relief" and, consequently, "do[es] not permit the court to infer more than the mere possibility of misconduct" which is insufficient to meet the standards set forth for Rule 8. *Ashcroft*, 129 S. Ct. at 1949.

### iii. Plaintiffs Fail to Meet Heightened Pleading Standard for Allegations of Fraud under Rule 9(b)

Even if Plaintiffs could somehow impose successor liability on PLR IP Holdings, the Federal Rules of Civil Procedure also require a heightened pleading standard for allegations of fraud under Fed. R. Civ. P. 9(b). In the case of such a claim, a plaintiff must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Here, Plaintiffs have alleged fraud: *e.g.*, violations of the Minnesota Uniform Deceptive Trade Practices Act and "Consumer Fraud In Violation of Minn. Stat. § 325F.69." (Compl. ¶¶ 61–79.) Since Plaintiffs fail to make these allegations with particularity, the Court should dismiss any counts involving fraud for failure to state a claim.

In the Eighth Circuit, a plaintiff can only satisfy the Rule 9(b) pleading standard by pointing to "such matters as time, place, and contents of false misrepresentations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citations omitted); *Parnes v. GATEWAY 2000, Inc.*, 122 F.3d 539, 549–50 (8th Cir.

1997). In other words, the complaint must allege the basic facts of "who, what, where, when, and how"—the "first paragraph of any newspaper story." *Drobnak*, 561 F.3d at 784; *Parnes*, 122 F.3d at 550. But "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *BJC Health Sys. v. Colombia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *Commercial Prop. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir. 1995)). Furthermore, "[a]llegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement" unless "the facts constituting the fraud are peculiarly within the opposing party's knowledge." *Drobnak*, 561 F.3d at 783–84.

This requirement seeks to allow "defendant[s] to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral . . . conduct." *BJC Health Sys.*, 478 F.3d at 917 (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)). The defendant is entitled to "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States ex rel. Costner v. United States*, 317 F.3d 883, 889 (8th Cir. 2003).

By way of example, the plaintiffs in *Drobnak v. Andersen Corporation* accused the defendant of manufacturing and selling defective windows. 561 F.3d 778. The plaintiffs alleged "that [the] Andersen windows were not filled with inert gas at the time of purchase and/or experienced gas leakage." *Id.* at 784. But they did not allege anything more specific as part of their "first paragraph of any newspaper article" showing: they lacked the "who, what, when, where, and how." *Id.* They also pled these

accusations "upon information and belief." *Id.* The Eighth Circuit affirmed a dismissal with prejudice of all claims sounding in fraud because they failed to state a claim under Rule 9(b)'s particularity requirement. *Id.* The court emphasized that a plaintiff may not plead fraud "upon information and belief"—especially when the accused product remains in the plaintiffs' possession. *Id.* Furthermore, they failed to allege facts with regards to "the what"—i.e., any facts that could show that the windows they purchased were actually defective. *Id.* They could not allege fraud by simply saying that "all Andersen [windows] . . . were not filled with inert gas, were sealed defectively, or were fitted with capillary tubes." *Id.*

In this case, none of Plaintiffs' alleged counts sounding in fraud can withstand a motion to dismiss under Rule 12(b)(6) because Plaintiffs fail to point to the particulars of "who, what, when, where, and how." *Parnes v. GATEWAY 2000, Inc.*, 122 F.3d at 549-50. Plaintiffs provide only the scarcest of information regarding her alleged defective television, stating:

> Plaintiff purchased her Television in or around June of 2007. Within 4 months, the picture went dark. Upon discovering that her TV was malfunctioning, Plaintiff contacted Polaroid or their agent, and was advised that the TV could be fixed, but would cost approximately $300.00 for a new module. **After further investigation, Plaintiff became concerned that her TV may not just be unreliable, it may be a fire hazard.** As a result, Plaintiff has not used her Polaroid LCD TV since!

(Compl. ¶ 35.) (emphasis added.) Plaintiffs' vague and conclusory allegations—"the picture went dark," "TV was malfunctioning" and "it may be a fire hazard"—are simply insufficient under Rule 9(b)'s pleading requirements.

First, Plaintiffs' factual allegations resemble those in *Drobnak*. The Complaint starts its "Substantive Factual Allegations" section by saying that "[u]pon information and belief, the Polaroid TVs [*sic*] are defectively designed as they expose the capacitors to excessive heat and/or excessive voltage." (Compl. ¶ 23.) Like the allegations in *Drobnak*, the Plaintiffs here simply state the televisions are defective. (*Id.*) While Plaintiffs attempt to shore this up by explaining how capacitors work, they do not point to anything that Polaroid Corporation (n/k/a PBE Corporation) did or failed to do that would result in capacitor failure. For example, Plaintiffs could have alleged that similar television manufacturers use a different process, thereby avoiding similar problems. Instead, Plaintiffs merely say that the televisions are "defectively designed," despite their own admission that "Polaroid or their agent" had "advised that the TV could be fixed." (*Id.* at 35; *see also id.* at 23.)

Second, Plaintiffs do not succeed in alleging the required basic facts of "who, what, where, when, and how" by merely reciting consumer complaints in the Complaint. By presenting seven pages of disjunctive, anonymous complaints by disgruntled customers on an Internet forum, the Complaint merely alleges that some customers were unhappy about some televisions and the customer service they received. (Compl. ¶ 26.) This collection of complaints does not allege any conduct or omissions by Polaroid Corporation (n/k/a PBE Corporation) —again, it only alleges that some customers are unsatisfied. It is also noteworthy that, despite the "hundreds & hundreds [*sic*]" of complaints (*see id.* at ¶ 26, at 9), Plaintiffs allege that Polaroid Corporation (n/k/a PBE Corporation) sold around three million of its television products every year. (*Id.*) It is

further noteworthy that based on the dates provided in those complaints, the complaints all appear to have been manufactured prior to PLR IP Holdings' purchase of the Polaroid brand in May 2009.  (*Id.*)  Thus, even if these consumer complaints did disclose some factual allegation, they would still only claim that a tiny fraction of Polaroid's products manifested flaws and during a time period prior to PLR IP Holdings' purchase of Polaroid brand assets free of such claims.

Third, because the televisions in question remain in the Plaintiffs' possession, Plaintiffs have had an opportunity to conduct a thorough examination to allow it to allege something more concrete than "upon information and belief."  (*Id.* at ¶¶ 18, 23.)  In that sense, this situation resembles the windows in *Drobnak*.  Like the windows, Plaintiffs and their counsel have sufficient access to the complained-of product to plead defects—if any exist—with more particularity, but have wholly failed to do so.  (*Id.* at ¶ 35.)

Finally, the policy purposes underlying Rule 9(b) are implicated here.  *See BJC Health Sys.*, 478 F.3d at 917 (quoting *Abels*, 259 F.3d at 920); *United States ex rel. Costner*, 317 F.3d at 889.  Based on this Complaint, PLR IP Holdings can argue little more in its defense than "we did not wrongfully foist defective televisions or inadequate capacitors on our customers."

Because this Complaint relies on sweeping allegations "upon information and belief," despite the clear body of case law requiring a heightened showing under Rule 9(b), this Court should grant PLR IP Holdings' motion to dismiss all of Plaintiffs' claims sounding in fraud.  It is simply not enough to claim that, upon information, belief and a

collection of anonymous consumer complaints, a defendant's products are somehow defective and that sales of those televisions are thus somehow fraudulent.

## IV.    CONCLUSION

For the foregoing reasons, defendant PLR IP Holdings (d/b/a Polaroid) respectfully requests the Court grant its motion to dismiss Plaintiffs' Complaint with prejudice.

Dated: August 18, 2011                                    Respectfully submitted,

s/Marta M. Chou
Mark J. Kalla (MN Bar No. 159487)
Annamarie A. Daley (Bar No. MN 158112)
Marta M. Chou (Bar No. 332112)
Barnes & Thornburg LLP
225 South Sixth Street, Suite 2800
Minneapolis, MN 55402
Phone:  (612) 333-2111
Fax:  (612) 333-6798
Emails: mark.kalla@btlaw.com;
 annamarie.daley@btlaw.com; and
 marta.chou@btlaw.com
